(631 P.2d 249)

No. 51,661
No. 51,662
No. 51,663

TIMOTHY L. FIELDER, Administrator c.t.a. of the Estate of George Franklin Flater, *Appellee/Cross-Appellant,* v. AILEEN L. HOWELL, CLYDE C. HOWELL and UNITED STATES FIDELITY AND GUARANTY COMPANY, a Maryland Corporation, *Appellants.*

Opinion filed July 10, 1981.

*Forrest E. Short,* of Short and Gentry, of Fort Scott, for the appellants.

*Richard D. Loffswold, Jr.,* of Girard, for appellee/cross-appellant.

Before FOTH, C.J., SPENCER and PARKS, JJ.

PARKS, J.: This appeal consolidates three actions involving the estate of George F. Flater. The actions are (1) proceedings to settle the estate of Flater; (2) the final accounting of the conservatorship of Flater; and (3) a suit by the administrator of Flater's estate alleging a wrongful conversion by the co-conservator/guardian, Aileen Howell. An identical memorandum decision and judgment was entered by the trial court in each of the three cases and both the co-conservator and the administrator appeal portions of the judgment.

On August 22, 1975, the probate court of Crawford County, Kansas, entered an order that Marvin Flater and Aileen Howell act as co-conservators of the estate of their father, George Flater. Subsequently, George became incapacitated as defined by K.S.A. 59-3002(1) and the district court appointed Aileen Howell as his guardian on April 5, 1977. Later that same day, Aileen and her husband, Clyde, cashed a certificate of deposit held in joint tenancy by Aileen, Clyde, and George Flater, Aileen's father. The certificate of deposit had been purchased in May 1972 by George and issued in joint tenancy to George, his wife Ella (who prede-

ceased him), Aileen and Clyde. The proceeds of the certificate, $15,262.53, were deposited in Clyde and Aileen's joint checking account in a Fort Scott bank.

George Flater died testate on January 18, 1978. His residuary legatee is his son, Marvin Flater. Timothy Fielder, administrator c.t.a. of the Flater estate, filed suit to reclaim the proceeds of the certificate of deposit. The trial court held that the certificate proceeds were a part of George's estate and had to be returned. However, the trial court allowed offsets against the complete reimbursement consisting of (1) the funds expended by Aileen for the care of her father, (2) her attorney fees, and (3) a fee for her services as conservator. Aileen Howell appeals from the order of reimbursement; the administrator cross-appeals from that portion of the order which allowed the above offsets.

It was conceded at oral argument that the certificate of deposit purchased by George Flater contained the magic words of joint tenancy. It is also undisputed that as joint tenants and survivors of her father, Aileen and Clyde would ordinarily be entitled to the joint tenancy proceeds. *In re Estate of Powell,* 222 Kan. 688, 691-92, 567 P.2d 872 (1977). However, the administrator contends that Aileen's dual status as joint tenant and guardian posed a conflict of interest which should compel forfeiture of her survivorship rights.

A similar situation has been addressed in Georgia. *Dowdy v. Jordan,* 128 Ga. App. 200, 196 S.E.2d 160 (1973). In *Dowdy,* an aged woman and her nephew were joint tenants on two savings accounts which she alone had opened. The nephew later applied for and was appointed guardian over her person and property, which consisted of the bank accounts and other assets valued at over $13,600. The guardian spent $13,650 for the maintenance of his ward during her lifetime but only $4000 of that sum was money withdrawn from the joint savings account. After the ward died, the guardian withdrew the remaining $13,652 in the bank accounts and deposited it in his own account as surviving joint tenant. The only assets remaining at her death were an open account in the amount of $610, and a house, lot and furniture with an estimated value of $7000. The woman's executor sued for the full amount of the two savings accounts, contending that the guardian breached his fiduciary duty by assuming the role of joint

tenant and guardian and should forfeit all right to the joint tenancy property.

The Georgia Court of Appeals agreed with the executor. The court discussed the duty of loyalty owed by a fiduciary and concluded that the positions of guardian and joint tenant posed a conflict of interest which could have affected the exercise of his fiduciary duties. The court held that the possibility that the fiduciary might be influenced by his joint tenancy interest constituted a breach of the duty of loyalty. The court further noted that the guardian's actual administration of his ward's estate enhanced the value of his personal succession as joint tenant.

Unlike the situation in *Dowdy*, there was no evidence here that Flater's conservator and guardian ever profited by the dual status as joint tenant and fiduciary. She had a right to the money in the account as a survivor and had been entrusted by her father to be a joint tenant several years before he was incapacitated. Aileen spent $1562.53 of the joint account to pay for George's expenses and there was no liquidation of other assets of the estate evidenced in the accountings filed for the period of August 22, 1975 (date Aileen appointed conservator), to January 18, 1978 (date of death). Thus, on the day Flater died, the property he owned and could have passed to others was the same property he owned on the day Aileen was appointed conservator. Had George died without ever having been a conservatee, Aileen and Clyde would have owned the CD as joint tenants, Aileen's remainder interest in the 80-acre farm would have become a fee, and Marvin Flater would have received all of the remaining property. Therefore, there was no evidence of actual impropriety of misuse of funds.

In *Jennings v. Speaker, Executrix,* 1 Kan. App. 2d 610, 614-617, 571 P.2d 358 (1977), the trustees of an express *inter vivos* trust were also the remaindermen of the trust. The court acknowledged this conflict of interest and stated that as a result, scrupulous fairness and impartiality were demanded of the trustees in allocating receipts as principal or income. There, the court found a demonstrated lack of such impartiality because the trustees as directors of the trust-owned holding company permanently retained the corporate earnings at the expense of the income beneficiary. Thus, the court looked beyond the existence of the conflict of interest to determine whether the beneficiary was harmed.

Appellee has urged this court to adopt a strict rule concerning the exercise of fiduciary powers. However, when the estate of the

ward is in no way diminished and the apparent conflict of interest does not manifest itself by controlling the guardian's actions, it would seem unduly harsh to make an example of a loyal fiduciary because of a potential, yet unrealized, conflict. We therefore hold that a case-by-case approach must be taken in alleged conflict of interest circumstances to determine whether the beneficiary of the trust is actually harmed or the trustee is rewarded by the dual interests.

We conclude that because the conservator is able to trace the proceeds received from cashing the certificate of deposit and the estate was in no way diminished, the conservator is entitled to the money as a surviving joint tenant despite the alleged breach of fiduciary obligation.

Our decision renders consideration of the points raised by the cross-appeal unnecessary. Judgment is reversed and remanded for further proceedings consistent with this opinion.